UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Susan Denise Dorn,<br>      Plaintiff,<br><br>    -vs-<br><br>Kilolo Kijakazi,<br>Acting Commissioner of Social Security,<br><br>      Defendant.<br>_____ | Civil Action No.: 4:22-cv-03329-TER<br><br><br>**ORDER** |

  This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A. Procedural History**

  Plaintiff filed an application for DIB and SSI on January 23, 2020, alleging inability to work since December 2019. (Tr. 19). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in November 2021, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 19). The Administrative Law Judge (ALJ) issued an unfavorable decision on December 30, 2021, finding that Plaintiff was not disabled. (Tr. 19-34). The Appeals Council denied review in August 2022. (Tr. 5). In September 2022, Plaintiff filed this action. (ECF No. 1).

B.  **Plaintiff's Background**

Plaintiff was born in October 1974 and was forty-five years old on the alleged onset date. (Tr. 32). Plaintiff has past relevant work experience as a general office clerk, computer cutter, medical records clerk, and appointments scheduler. (Tr. 32). Relevant medical records will be summarized under pertinent issue headings.

C.  **The ALJ's Decision**

In the decision of December 30, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 19-34):

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since December 18, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following combination of severe impairments: degenerative disc disease, trochanteric bursitis, headache, cervical dystonia, vocal motor tics, obesity, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently push and pull. She can never climb, occasionally stoop, kneel, crouch, and crawl, and frequently balance. She can never reach overhead. She can have frequent exposure to excessive noise, but no exposure to workplace hazards. She is limited to simple, routine tasks performed two hours at a time with only simple work-related decisions and few, if any, changes in the work setting, as well as occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 31, 1974 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ did not explain how the RFC accounts for Plaintiff's severe impairment of headaches. (ECF No. 11 at 18). Earlier, in Plaintiff's issue regarding opinions, Plaintiff points out that the ALJ relies on normal objectives that have nothing to do with headaches. (ECF No. 11 at 12). Defendant argues the ALJ provided four reasons supporting the subjective symptom evaluation[1] finding as to migraines: Plaintiff's treatment, response to treatment, objective

---

[1] While Plaintiff cited SSR 16-3p under the brief's issue heading for opinions, Plaintiff has not contested the actual subjective symptom evaluation finding by the ALJ. Plaintiff's issues with the RFC are different than the subjective symptom evaluation and analyzed separately. An "RFC assessment is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021).

3

evidence, and daily activities. (ECF No. 12 at 21). Plaintiff argues the ALJ erred in evaluating Dr. Woschkolup's opinions by misconstruing and cherrypicking the records. (ECF No. 11 at 6-17). Defendant argues the ALJ provided sufficient analysis of the supportability and consistency factors.

**A.      LEGAL FRAMEWORK**

      **1.      The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the

4

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform

---

claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

5

other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

<u>Headaches/Migraines</u>

Plaintiff argues the ALJ did not explain how the RFC accounts for Plaintiff's severe impairment of headaches. (ECF No. 11 at 18). Earlier, in Plaintiff's briefed issue on opinions, Plaintiff points out that the ALJ relies on normal objectives that have nothing to do with headaches. (ECF No. 11 at 12). Defendant argues the ALJ provided four reasons as to migraines: Plaintiff's treatment, response to treatment, objective evidence, and daily activities. (ECF No. 12 at 21).

Under the combination of impairments finding, the ALJ stated:

> Despite having headaches, the claimant has unremarkable MRI of the brain (3F/171-172). She is consistently alert, oriented, and in no acute distress with normal behavior, judgment, and speech. She has periods of normal mood and affect (4F/14, 4F/18, 5F/9, 8F/10, 9F/38, 9F/9, 10F/50, 12F/13, 13F/26, 13F/71). She has no cranial nerve deficit (5F/14, 8F/10, 9F/38, 9F/9). She has normal coordination and gait (8F/11, 9F/9). The neurologist has reported that the claimant's headaches are "pretty stable" (13F/22).

(Tr. 23). In summarizing Plaintiff's allegations, the ALJ noted Plaintiff's testimony that she "has headaches on a regular basis, which require her to lie down and sleep." (Tr. 25-26). Plaintiff reported elsewhere that poor sleep worsened headaches. (Tr. 26). The ALJ noted that a neurologist stated Plaintiff's "migraines are worsened by cervical spine disease and cervicogenic migraines have played into the pain." (Tr. 26). In the RFC narrative, the ALJ addressed headaches/migraines:

> The claimant has reported developing headaches following a car accident in 2019. She has daily mild headaches and more serious headaches about 2 or 3 times per week (9F/4)[4]. A neurologist has stated that the claimant's migraines are worsened by cervical spine disease and cervicogenic migraines have played into the pain (13F/39).

---

[4] Exhibit 9F/4 is neurologist Dr. Benjamin's September 2020 note: Plaintiff "has 2 different kind[s] of headaches one is a mild dull pretty much daily headache and the other about 2-3 times per week in the occipital and high cervical region she gets enormous amount of pressure pounding and it feels like her head [is going to] explode." (Tr. 948).

7

> Because of headaches, I have limited the claimant to light exertion with restrictions on postural demands, working around noise and hazards, and mental demands. However, the record does not support the need for additional restrictions due [to] headaches not stated in the residual functional capacity. The claimant has unremarkable MRI of the brain (3F/171-172). She is consistently alert, oriented, and in no acute distress with normal behavior, judgment, and speech. She has periods of normal mood and affect (4F/14, 4F/18, 5F/9, 8F/10, 9F/38, 9F/9, 10F/50, 12F/13, 13F/26, 13F/71). She has no cranial nerve deficit (5F/14, 8F/10, 9F/38, 9F/9). She has normal coordination and gait (8F/11, 9F/9). The neurologist has reported that the claimant's headaches are "pretty stable" (13F/22).
>
> I have considered the effects of headaches by finding them to be a medically determinable severe impairment, in finding that none of the impairments, singly or in combination, meets or medically equals listing severity and by fully considering the effects of migraine headaches in assessing the claimant's residual functional capacity in accordance with the regulations and SSR 19-4p. I have considered migraine headaches in combination with co-existing severe and nonsevere impairments. The residual functional capacity is the most a person can do despite his or her limitation(s). We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the residual functional capacity. Consequently, in part, based on migraine headaches, as well as in consideration of the combination of migraine headaches with the other "severe" and "nonsevere" impairments, I have limited the claimant to light work with additional postural, environmental, and mental restrictions.

(Tr. 27). Later in evaluating opinions, the ALJ states again:

> Despite headaches, the claimant has unremarkable MRI of the brain (3F/171-172). She is consistently alert, oriented, and in no acute distress with normal behavior, judgment, and speech. She has periods of normal mood and affect (4F/14, 4F/18, 5F/9, 8F/10, 9F/38, 9F/9, 10F/50, 12F/13, 13F/26, 13F/71). She has no cranial nerve deficit (5F/14, 8F/10, 9F/38, 9F/9). She has normal coordination and gait (8F/11, 9F/9). The neurologist has reported that the claimant's headaches are "pretty stable" (13F/22).

(Tr. 30). In evaluating Dr. Woschkulup's opinion, the ALJ, citing Exhibit 13F/26, states "her migraines do quite well with Zonisamide." (Tr. 31). Defendant's brief notes that Dr. Woschkolup did not treat her migraines. (ECF No. 12 at 19). Exhibit 13F/26 is a note for Dr. Benjamin of Bon

8

Secours Neurology. While the note states doing quite well with zonisamide, the note continues that Plaintiff has 2-3 headaches per week with dull occipital pounding pressure, exploding at times, but for the most part pretty stable since starting medications. The full context of the note does not imply that headaches are no longer an issue; the note is present tense that Plaintiff has 2-3 a week. (Tr. 1198). Plaintiff was still assessed with chronic nonintractable headache. (Tr. 1202).

Plaintiff testified the cervical issues were the cause of her headaches. (Tr. 52-53). Plaintiff testified if she did not take her medication she has a constant headache. When she takes medication, they come and go. (Tr. 53). Plaintiff testified she must lie down and go to sleep. (Tr. 53).

SSR 19-4p, titled Evaluating Cases Involving Primary Headache Disorders, provides: "We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC." SSR 19-4p at *7 (answering the titled question, "How do we consider an MDI of a primary headache disorder in assessing a person's [RFC]?"). An example is given that symptoms of such MDI may "cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, *8.

It is not apparent in the decision whether the ALJ considered the frequency or duration of the migraines contained in Plaintiff's treatment records. (Tr. 25-32). The ALJ repeatedly relied on a normal MRI, normal mood, and normal gait when discussing headaches/migraines. (Tr. 23, 27, 30). "[T]here will often be no "objective" evidence of migraine headaches." *See Robinson v. Colvin*, 31 F. Supp. 3d 789, 793 n1 (E.D.N.C. 2014)(*citing Duncan v. Astrue*, 2008 WL 111158 *7 (E.D.N.C. Jan. 8, 2008) (noting that migraine headaches are a condition that cannot be diagnosed or confirmed through laboratory or diagnostic testing and listing cases holding same); *Brownlee-Nobs v. Colvin*,

9

No. 1:14-CV-03988-JMC, 2015 WL 5908524, at *15 (D.S.C. Oct. 7, 2015)("It is impossible to gauge ...the frequency of her migraines through any objective tests..."); *Harrington v. Colvin*, 2016 WL 320144, at *4 (E.D.N.C. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL 311284 (E.D.N.C. Jan. 25, 2016)(an ALJ's reliance on normal imaging "merely suggests that the cause of her headaches cannot be identified through such testing, not that she does not suffer from headaches," citing cases that found "migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing").

Plaintiff argues the ALJ does not explain how the RFC accounts for the severity, frequency, and duration of Plaintiff's migraines and that the required discussion under SSR 19-4p is lacking. The ALJ must consider whether Plaintiff can perform the RFC on a regular and continuing basis. 20 C.F.R. § 404.1545. SSR 96-8p explains that, "a 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." The ALJ's opinion is lacking in explanation of the impact of Plaintiff's migraine headaches, especially as to frequency, on Plaintiff's ability to sustain work activity on a regular and continuing basis. The ALJ found headaches/migraines were severe, and the ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 21, 26).

The ALJ did not provide an accurate and logical bridge from the evidence to his finding. The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Because the Court finds the ALJ's analysis with respect to the above issues is a sufficient basis to remand the case to the Commissioner, the undersigned does not specifically address Plaintiff's additional allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.

2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the Commissioner should consider each of Plaintiff's allegations of error. All issues briefed by Plaintiff should be appropriately addressed on remand by the ALJ in accordance with the applicable statutes, rules, regulations, and case law.

### III. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion

|  |  |
|---|---|
| April 28, 2023 | s/ Thomas E. Rogers, III |
| Florence, South Carolina | Thomas E. Rogers, III |
|  | United States Magistrate Judge |